UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FIRAS M. AYOUBI,

    Plaintiff,

  v.

HANESBRANDS INC., KEEFE GROUP LLC,
ACCESS CATALOGUE COMPANY and FILA
SPORTING GOODS COMPANY,

    Defendants.

Case No. 18-cv-1806-JPG-MAB

## MEMORANDUM AND ORDER

This matter comes before the Court plaintiff Firas M. Ayoubi's response to the Court's February 15, 2019, order to show cause (Doc. 7). In the original complaint, Ayoubi, a prison inmate, sued three private entities under several tort theories based on tee-shirts he claims were defective that he had purchased at the prison commissary. He purchased multiple shirts at a cost of $16 per 3-pack from the commissary at Pinckneyville Correctional Center. He claims that the defendants represented that the shirts had a "lay flat collar" that "will never lose its shape" and would have a "perfect fit" when they did not, in fact, lay flat, keep their shape, or fit perfectly. He asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (Count 1), strict product liability (Count 2), breach of warranty (Count 3), unjust enrichment (Count 4), fraudulent concealment (Count 5), and negligent misrepresentation (Count 6). He seeks compensatory and punitive damages for his tee-shirt purchases.

In the Court's order to show cause, it noted several jurisdictional defects in Ayoubi's complaint. Specifically, the Court noted he:

- failed to make clear whether he claims to be a citizen of Illinois because it is the state of his incarceration or because he was an Illinois citizen before he was sent to prison and does not plan to live elsewhere when he gets out;

- failed to specifically allege the state of the principal place of business or the state of incorporation of defendants Hanesbrands Inc. and Access Catalogue Company;

- failed to allege the citizenships of every member of defendant Keefe Group LLC; and

- failed to allege facts plausibly suggesting that the amount in controversy exceeds $75,000, exclusive of interest and costs.

The Court allowed Ayoubi to amend his complaint to correct the jurisdictional defects.

Ayoubi filed an amended complaint (Doc. 8) in which he attempts to correct some of the defects noted by the Court and adds a new defendant, Fila Sporting Goods Company. He is not completely successful in his efforts. He fails to explain the basis for his claim to be a citizen of Illinois, and he fails to allege the state of the principal place of business or the state of incorporation of defendants Hanesbrands Inc. and Access Catalogue Company.

He makes an attempt to list the citizenships of the members of Keefe Group LLC. However, for many of the entities he lists it is unclear whether they are corporations, which would have the citizenships of their principal place of business and their state of incorporation, or other types of entities such as limited liability companies, partnerships or other voluntary associations, which would have the citizenships of their members (. . . and their members' members, and so on up the ownership chain). *See Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002) (noting "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be"). Furthermore, it appears the companies Ayoubi lists as members of Keefe Group LLC are its affiliates but not necessarily its members. *See* About Keefe Group, https://www.keefegroup.com/home-100 (visited Apr. 8, 2019).

In sum, Ayoubi's amended complaint fails to cure all the citizenship pleading defects noted in the Court's order to show cause.

In his amended complaint, Ayoubi also adds new claims against a new defendant, Fila Sporting Goods Company. He claims this new defendant sold defective shoes to Keefe Group LLC and Access Catalogue Company, which then sold four of these pairs of defective shoes at a cost of $40 apiece to him while he was incarcerated at Dixon Correctional Center. Leave of court is required before a plaintiff can add new parties to a case. *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1073 n. 2 (7th Cir. 1989); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 736 (7th Cir. 1986); *LaBatt v. Twomey* , 513 F.2d 641, 651 n. 9 (7th Cir. 1975); *see* Fed. R. Civ. P. 21 (stating in pertinent part, "On motion or on its own, the court may at any time, on just terms, add or drop a party."). The Court did not give Ayoubi leave to add this new party in the amended complaint; it only authorized correction of jurisdictional defects.

Most importantly, Ayoubi fails to allege facts sufficient to plausibly suggest more than $75,000 is in issue, exclusive of interest and costs. In the amended complaint, Ayoubi claims actual economic injury for the price he paid for the products in issue, tort damages for fraud and deceptive business practices, plus punitive damages of $5,000 per count against each defendant. He alleges no physical injury, damage to property, or consequential damages caused by the defective products. He also claims the amount will be satisfied once he amends his complaint to add new defective products he will uncover in discovery and when he seeks class certification.

Careful examination shows, however, that Ayoubi is wrong. The maximum actual economic injury under a contract/quasi-contract theory (breach of warranty, unjust enrichment) suffered by Ayoubi (assuming the shoes and tee-shirts were actually worthless) was likely no more than around $380 (4 pairs of shoes x $40/pair = $160; several 3-packs of tee-shirts (assume 10 packs) x $16/pack = $160). Where there is no suggestion the products resulted in physical injury to Ayoubi, damage to his personal property, or consequential damages, and where the only

3

tort injury alleged is consumer fraud from deception that resulted in his loss of about $380 at the most, damages under a fraud theory are likely to be the same. *Gerill Corp. v. Jack L. Hargrove Builders,* 538 N.E.2d 530, 537-38 (Ill. 1989) (in fraudulent misrepresentation claims, "damages are determined by assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true").

Even if an award of punitive damages were warranted, no permissible punitive damage award could cause the total damages to even approach $75,000. Punitive damages are intended to punish a defendant's blameworthy behavior and deter him and others from committing bad acts in the future, but they will violate constitutional due process guarantees if they are excessive. To determine if a punitive damages award is excessive, the Court should consider how reprehensive the defendant's conduct was, the ratio between punitive and compensatory damages, and how they compare with other civil penalties that would punish the defendant's behavior. *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018) (citing *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (rejecting punitive damages award of 145 times compensatory damages and cautioning that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996) (rejecting punitive damage award of 500 times compensatory damages)). Here, a punitive damage award would have to be more than $74,000—an award greater than 196 times the $380 compensatory damages in issue—to get Ayoubi's total countable damages over the jurisdictional threshold. Considering the defendants' alleged consumer fraud—relatively run-of-the-mill consumer fraud in selling subpar apparel to vulnerable consumers—a punitive damage award of more than $74,000 is unthinkable.

To the extent Ayoubi invokes other fraudulent sales he may uncover in discovery or a potential class action (which has not even been pled), the Court cannot base its jurisdictional

assessment at this moment on such speculative future occurrences.

Ordinarily the Court would allow Ayoubi another chance to correct his defective pleading of the parties' citizenships—he is, after all *pro se*—yet the Court believes he will be utterly unable to add allegations plausibly raising his damages claim to the $75,000 jurisdictional threshold. Thus, it would be futile to allow him to amend the complaint when he could not possibly allege facts plausibly suggesting an adequate amount in controversy. Accordingly, the Court **DISMISSES** this case for **lack of jurisdiction** and **DIRECTS** the Clerk of Court to enter judgment accordingly. The motion for service of process at Government expense (Doc. 10) is **DENIED as moot** in light of the dismissal of this action.

**IT IS SO ORDERED.**
**DATED: April 9, 2019**

                                                                 s/ J. Phil Gilbert
                                                                 **J. PHIL GILBERT**
                                                                 **DISTRICT JUDGE**